Mark T. Drooks - State Bar No. 123561
   mtd@birdmarella.com
Lisa M. Lawrence - State Bar No. 240375
   lml@birdmarella.com
BIRD, MARELLA, BOXER, WOLPERT,
   NESSIM, DROOKS & LINCENBERG, P.C.
1875 Century Park East, 23rd Floor
Los Angeles, California  90067-2561
Telephone: (310) 201-2100
Facsimile: (310) 201-2110

Attorneys for Defendant Paul Morabito

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION

| | |
|---|---|
| NORTHEAST PROPERTIES, LLC., a Delaware Limited Liability Company; LARRY WILLARD, individually; HORACE WILLARD, individually; DAN GLUHAICH, individually,<br><br>    Plaintiffs,<br><br>vs.<br><br>PAUL MORABITO; and DOES 1 through 10 inclusive,<br><br>    Defendants. | CASE NO. SAC VO8-460 CJC (CWx)<br><br>**DEFENDANT PAUL MORABITO'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFFS' MOTION TO TRANSFER; DECLARATION OF PAUL MORABITO**<br><br>[Assigned to the Honorable Cormac J. Carney]<br><br>Date: July 21, 2008<br>Time: 1:30 p.m.<br>Ctrm.: 9B |

# TABLE OF CONTENTS

Page

I     INTRODUCTION ................................................................................................ 1

II    RELEVANT FACTS .......................................................................................... 1

       A.     Background ............................................................................................... 1

       B.     Relevant Facts ........................................................................................... 3

III   ARGUMENT ...................................................................................................... 5

       A.     This Action Could Not Have Been Brought In The Northern District Of California Because The Purchase Agreement Was Not Negotiated, Performed Or Allegedly Breached There, Nor Were The Alleged Misrepresentations Made There. ............................. 5

       B.     The Convenience And Fairness Factors Weigh In Favor Of Transfer To Reno, Nevada. ..................................................................... 7

             1.      The key non-party witnesses in this action reside in Reno, Nevada. .................................................................................... 7

             2.      Plaintiffs Gluhaich and Willard have extensive contacts in Reno, Nevada, whereas Morabito has no contacts in the Northern District of California. .................................................... 9

             3.      There is no connection between this action and Northern California, aside from plaintiffs' alleged residence in Santa Clara County, but the action is closely tied to Nevada. ................................................................................... 9

             4.      The District of Nevada will potentially be more familiar with some of the governing law in this action. .......................... 10

             5.      Plaintiffs' choice of forum is entitled to no deference, since both parties are seeking transfer from the Central District, which is an improper forum. ......................................... 10

IV   CONCLUSION ................................................................................................ 11

# TABLE OF AUTHORITIES

**Page**

### Federal Cases

*Costco Wholesale Corp. v. Liberty Mutual Insurance Co.*,
 472 F. Supp. 2d 1183 (S.D. Cal. 2007) ........................................................ 7, 8, 10

*Decker Coal Co. v. Commonwealth Edison Co.*,
 805 F. 2d at 843 ............................................................................................... 10

*Jones v. GNC Franchising, Inc.*,
 211 F. 3d 495 (9th Cir. 2000) ............................................................................. 5

*Van Dusen v. Barrack*,
 376 U.S. 612, 84 S. Ct. 805 (1964) ............................................................... 9, 10

### State Cases

*Nordquist v. Blackham*,
 2006 WL 2597931 (slip copy) ............................................................................ 6

*Raiber v. Dentsply Intern., Inc.*,
 1999 WL 335821 (S.D.N.Y. May 24, 1999) .................................................. 5, 10

### Federal Statutes

28 U.S.C. § 1391(b)(2) ............................................................................................ 6

28 U.S.C. § 1404(a) ................................................................................................. 6

# MEMORANDUM OF POINTS AND AUTHORITIES

## I

## INTRODUCTION

This lawsuit belongs in Nevada, where the property sale was brokered, the defendant and property managers reside, and the buyers and investors have extensive contacts. *See* the Declaration of Paul Morabito ("Morabito Decl."), ¶¶ 15-17; 21-22; 28-29. There is no connection between this case and the Northern District of California. None of the witnesses in this action – with the exception of plaintiffs – are located in that district. *See id.* at ¶¶ 23-30. The properties themselves are in Pennsylvania and New York, and all legal issues relating to their purchase are governed by Pennsylvania and New York choice of law provisions. *See* paragraph 15 of the Purchase Agreement and Escrow Instructions ("Purchase Agreement") attached as Exh. A to the Declaration of Paul Morabito filed in support of his Motion to Dismiss. Moreover, the email communications that allegedly constitute actionable misrepresentations were sent to plaintiff Dan Gluhaich ("Gluhaich") when he was acting in his capacity as a licensed Nevada real estate agent, brokering the deal out of an office in Nevada. *See* Morabito Decl., ¶ 31.

Morabito respectfully urges the Court to deny plaintiffs' motion to transfer this action to the Northern District of California and instead grant his motion to transfer the action to the District of Nevada - Reno, where Morabito and key non-party witnesses reside.

## II

## RELEVANT FACTS

**A.  Background**

This action arises out of a four-year-old real estate transaction between LJW Overland Plaza, LLC ("Overland"), the purported predecessor-in-interest to plaintiff Northeast Properties, LLC ("Northeast"), on the one hand, and two non-party corporations, Tibarom, Inc. ("Tibarom") and Eureka Petroleum, Inc. ("Eureka). *See*

1  Cmplt, ¶ 37.  In the transaction at issue (the "Purchase"), Overland purchased from
2  Tibarom and leased back to Eureka five Jiffy Lube locations located in New York
3  and Pennsylvania.  *Id.*  Tibarom and Eureka were both Nevada corporations, which
4  held the vast majority of their assets in Nevada, Pennsylvania and New York.  *See*
5  Morabito Decl., ¶ 32.  Morabito is alleged to have been the President and Chief
6  Executive Officer of Tibarom and Eureka at the time of the Purchase.  *See* Cmplt.,
7  ¶¶ 6, 7.

8  The Transaction occurred in April and June 2004.  *See* Cmplt., ¶ 43.  Nearly
9  three years after the leases were assigned in May 2005, the lessees defaulted on their
10 obligations to pay rent, and plaintiffs sold the properties for $3,000,000 less than
11 they had originally paid.  *See id.* at ¶ 43.  Searching in 2008 for a financially solvent
12 defendant whom they could blame for the downturn in the oil and real estate
13 markets, plaintiffs have sued Morabito (who is no longer associated with Tibarom or
14 Eureka).  The complaint alleges causes of action for fraud, negligent
15 misrepresentation, unfair business practices, civil RICO and an "accounting."  The
16 core factual allegation is that Morabito made misrepresentations concerning the
17 financial performance of the Jiffy Lube locations in New York and Pennsylvania
18 that were operating on the properties plaintiffs purchased.  *See id.* at ¶¶ 15-35.

19 This action originally was filed in Superior Court for Orange County, based
20 on the erroneous allegation that Morabito is a resident of that county.  He is not.
21 Since 2005, Morabito has been a permanent resident of Reno, Nevada.  *See*
22 Morabito Decl., ¶¶ 2-7.[1]

---

[1] Plaintiffs' stubborn insistence that defendant Morabito resides in Laguna Beach – although a moot point on this motion – is inaccurate.  As detailed in the declaration accompanying Morabito's motion to dismiss, and reiterated in the second declaration filed in support of this opposition, Morabito became a resident and citizen of Reno, Nevada in 2005.  *See* Morabito Decl., ¶¶ 2-7.  Thus, plaintiffs' proffered information on Morabito's 2003-2004 California connections is stale and (footnote continued)

Morabito timely removed this action to this Court based on both diversity and federal question jurisdiction. He thereafter moved to dismiss the action for lack of venue and failure to state a claim or, in the alternative, to transfer the action to the District of Nevada-Reno. Plaintiffs responded with this motion, set for hearing on the same date.

**B.     Relevant Facts**

The Purchase was negotiated largely while Morabito was in Canada and Gluhaich was in Nevada, where he held and still holds a real estate license. *See* Morabito Decl., ¶¶ 14, 16, 31. Gluhaich used his Nevada real estate license to broker the Purchase through the Las Vegas office of Sperry Van Ness. *See id.* at ¶ 17. Although plaintiffs assert in their motion that the emails alleged in the Complaint "were directed to Plaintiffs . . . in Santa Clara County," (Mtn., p. 6), Gluhaich offers no factual support for this assertion in his declaration. Gluhaich would have been unable to do so truthfully, since Morabito directed these emails to Gluhaich in his capacity as a Nevada real estate agent based in Las Vegas. *See* Morabito Decl., ¶¶ 14, 16. Finally, Gluhaich's suggestion that Morabito made "presentations" to solicit investors "in Santa Clara County" is not accurate. *See* Gluhaich Decl., ¶ 14. Morabito made no such presentations to the plaintiffs. *See* Morabito Decl., ¶ 13. It was Gluhaich, whom Morabito met in Reno, Nevada, who pitched the Purchase to the other plaintiffs. *See id.* at ¶¶ 10, 13.

Because the claims in this action center on the financial performance of

---

immaterial. *See* the Declaration of Dan Gluhaich ("Gluhaich Decl."), ¶¶ 4-5. Gluhaich's claim that Morabito has a "home" in Palm Springs, which Gluhaich allegedly visited once "between 2003 and the present," suggests (wrongly) that Morabito lives in California. *Id.* at ¶ 5. Owning a vacation home in California is legally distinct from residing in the state. *See* Morabito Decl., ¶ 8. Finally, Gluhaich's statement that Morabito "repeatedly told me that he lives in Laguna Beach" is – to be charitable – a mischaracterization of the facts. *See id. at* ¶ ¶ 2.

certain Jiffy Lube stores operating on the properties that plaintiffs purchased, the key witnesses in this action will be the executives responsible for the financial performance and reporting of these stores: Greg Breen and Trevor Lloyd, both of whom reside in Reno, Nevada. *See* Morabito Decl. at ¶¶ 28-29. The local Jiffy Lube managers – who would have also have knowledge of the stores' financial performance – reside in Pennsylvania and New York. *See id.* at ¶ 30. None of the potential witnesses whom the plaintiffs identify have any connection to the Purchase or to the negotiations leading up to it, and many of them live either in Southern California or outside the country. *See id.* at ¶¶ 23-27. Moreover, Gluhaich's statement that these defendants "heard" the representations at issue in this action contradicts plaintiffs' motion and complaint, which identify the representations as arriving via "email and other forms of written communication." Mtn., p. 6.

Although Morabito is the partial owner of two vacation homes in Southern California, he has no business dealings anywhere in the state, nor does he own any property in the Northern District. *See* Morabito Decl., ¶¶ 8-9. In contrast, Gluhaich and plaintiff Larry Willard ("Willard") own extensive property in the Reno area. *See id.* at ¶ 15. Willard's largest single real estate investment – approximately $17 million – is in Reno, and Gluhaich, who retains his Nevada real estate license, holds the majority of his personal real estate investments in Reno, where he is currently developing additional properties. *See id.* at ¶¶ 21-22. Owing to their extensive investments in Reno, both Willard and Gluhaich travel there on a regular basis. *See id.* at ¶ 15.

The claims in this action are contractually governed by Pennsylvania and New York law. *See* paragraph 15 of the Purchase Agreement attached as Exhibit A to the Declaration of Paul Morabito filed in support of his Motion to Dismiss. However, the action also could involve Nevada law, because Gluhaich's covert participation in the Purchase as a principal may have violated Nevada real estate regulations. *See* Morabito Decl., ¶¶ 17-20. With no notice to Morabito, Tibarom or

broker Sperry Van Ness, Gluhaich invested his $200,000 commission in the Purchase, becoming a buyer while officially serving as a real estate agent. *See id.* at ¶ 18.

### III

### ARGUMENT

All parties agree that this action should be transferred. The issue is where best to transfer it. "Despite this unusual posture, it is appropriate for the Court to utilize the traditional forum non conveniens factors." *Raiber v. Dentsply Intern., Inc.*, 1999 WL 335821, *1 (S.D.N.Y. May 24, 1999).[2] Among the factors for courts to consider are "(1) the location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof." *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498 (9th Cir. 2000). Section 1404(a) requires courts to weigh the convenience and fairness factors on an "individualized, case-by-case" basis. *Id.* Here, the balance of factors tips decidedly toward Nevada.

**A.   This Action Could Not Have Been Brought In The Northern District Of California Because The Purchase Agreement Was Not Negotiated,**

---

[2] "In a typical forum non conveniens controversy, one party wishes the action to remain where it is, while the other party wishes it to be transferred to another district. The instant situation is anomalous in that neither party wishes the action to remain in this district." *Id.*

**Performed Or Allegedly Breached There, Nor Were The Alleged Misrepresentations Made There.**

Under 28 U.S.C. § 1404(a), courts may transfer an action only to a district in which it "might have been brought." This action could not have been brought in the Northern District of California.

Since Morabito resides in Reno, Nevada and the properties at issue in this action are located in Pennsylvania and New York, this action could only have been brought in the Northern District of California if "a substantial portion of the acts and omissions giving rise to the claims occurred in that district." 28 U.S.C. § 1391(b)(2). In contract actions, the place of execution is not necessarily the district where "a substantial portion of the acts and omissions giving rise to the claims occurred." The court must also consider where the negotiations, performance and alleged breach took place. *See, e.g., Nordquist v. Blackham*, 2006 WL 2597931, *2 (slip copy) (W.D. Wash. September 11, 2006) (venue improper in district where contract was executed, when majority of negotiations, as well as performance and alleged breach occurred elsewhere).

Although Willard may well have signed the Purchase Agreement in Santa Clara County, the negotiations did not take place there, and Tibarom executed the contract in Los Angeles. *See* page 11 of the Purchase Agreement attached as Exh. A to the Declaration of Paul Morabito filed in support of his Motion to Dismiss. Moreover, the contract was not negotiated in California; Morabito was in Canada for the majority of that time. *See* Morabito Decl., ¶ 14. Since the real property that is the subject of the Purchase Agreement is located in New York and Pennsylvania, the Agreement was performed in these states, and any alleged breach of the Agreement or attendant property leases must have occurred there. Finally, the emails identified in the complaint were sent to Gluhaich is his capacity as a licensed Nevada real estate agent, handling the Transaction through his Nevada brokerage firm. *See* Morabito Decl., ¶ 31. There is not likely to be a factual dispute over who

1  sent these emails. Thus, a "substantial portion" of the events underlying plaintiffs'
2  claims did not occur in the Northern District of California, and venue is improper in
3  that district.

4  **B.    The Convenience And Fairness Factors Weigh In Favor Of Transfer To**
5  **      Reno, Nevada.**

6      **1.    The key non-party witnesses in this action reside in Reno, Nevada.**

7  As plaintiffs admit, "[c]onvenience of witnesses is often the most important
8  factor in a § 1404(a) transfer motion." *Costco Wholesale Corp. v. Liberty Mutual*
9  *Ins. Co.,* 472 F. Supp. 2d 1183, 1193 (S.D. Cal. 2007). "In establishing
10 inconvenience to witnesses, the moving party must name the witnesses, state their
11 location, and explain their testimony and its relevance." *Id.* The court "consider[s]
12 not simply how many witnesses each side has and the location of each, but also the
13 importance of the witnesses." *Id.* (quotation omitted). In this case, the most
14 important witnesses are in Reno.

15 The core allegation of plaintiffs' complaint is that Morabito misrepresented
16 the financial status of the Jiffy Lube stores operating on the properties that plaintiffs
17 purchased. In their complaint, as well as their motion, plaintiffs claim that these
18 alleged misrepresentations were made in emails and other writings. *See, e.g.,* Mtn.,
19 p. 6. No witnesses other than Morabito or Gluhaich should be necessary to
20 authenticate these emails. However, plaintiffs have listed six "witnesses" with no
21 connection whatsoever to the Purchase at issue in this action, who allegedly "heard"
22 Morabito make misrepresentations in unspecified contexts. *See* Gluhaich Decl, ¶¶
23 7-13. None of these purported witnesses actually participated in or observed any of
24 the events alleged in the complaint. *See* Morabito Decl., ¶¶ 23-27. Moreover, only
25 three of these witnesses are alleged to live in the Northern District – and one of them

is an agent in the Morgan Hill office of Gluhaich's firm, Sperry Van Ness.[3] *See id.* at ¶ 27. The remaining two "witnesses" who "on information and belief" allegedly reside in Santa Clara County are landlords of Nevada properties purchased in separate transactions wholly unrelated to the facts asserted in this action. *See id.* at ¶ 26. Finally, two of the witnesses identified as residing in Southern California – Jeffrey Langan and Philip Tripoli – are former Tibarom employees. Langan currently resides in Dubai, and Tripoli resides in southern California; neither resides in the Northern District of California. *See id.* at ¶¶ 23, 25.

In their desperate attempt to identify "witnesses" who *may,* on information and belief, reside in Northern California, plaintiffs have neglected to name the foundational witnesses in this action: Greg Breen and Trevor Lloyd – the Jiffy Lube executives who were responsible for overseeing the financial performance and reporting of the Jiffy Lube stores at issue in this action both before and after the Purchase. *See* Morabito Decl., ¶¶ 28-29. Greg Breen and Trevor Lloyd reside in Reno, Nevada. *See id.* If these essential third-party witnesses prove unwilling to attend trial, the District of Nevada-Reno – but not the Northern District of California – could compel their attendance.

Since the two witnesses with the most important information regarding the truth or falsity of the allegations in the complaint reside in Reno, this action is more appropriately transferred there than to the Northern District of California, where plaintiffs are merely "informed and believe" that three individuals with no connection to the events alleged in this action reside.

---

[3] Since Gluhaich alleges the Santa Clara County residence of these "witnesses" only on information and belief, the Court should give no weight to them. *See* Gluhaich Decl., ¶¶ 10-13.

**2.     Plaintiffs Gluhaich and Willard have extensive contacts in Reno, Nevada, whereas Morabito has no contacts in the Northern District of California.**

Section 1404(a) provides for transfer to a more convenient forum, "not to a forum likely to prove equally convenient or inconvenient," and a "transfer should not be granted if the effect is simply to shift the inconvenience to the party resisting the transfer." *Van Dusen v. Barrack*, 376 U.S. 612, 646, 84 S. Ct. 805 (1964). Transferring this action to the Northern District of California would merely shift inconvenience to Morabito. He has been a permanent resident of Reno, Nevada since 2005, with no personal property or business dealings in the Northern District of California. *See* Morabito Decl., ¶¶ 2-9. It would therefore be unduly burdensome for Morabito to litigate in that district.

On the other hand, Gluhaich and Willard have continuing and substantial business interests in Reno, Nevada. Gluhaich retains his Nevada real estate license, holds the majority of his personal real estate investments in Reno, and is actively developing additional properties both in Reno and Fernley, Nevada. *See id.* at ¶¶ 10, 15-16. Willard's largest single real estate investment – worth approximately $17 million – is in Reno, and both he and Gluahich travel to Reno on a regular basis. *See id.* at ¶ 15, 21-22. It therefore would not place a substantial burden on them to litigate in Reno.

**3.     There is no connection between this action and Northern California, aside from plaintiffs' alleged residence in Santa Clara County, but the action is closely tied to Nevada.**

The contracts at issue here – for the purchase and lease of properties in Pennsylvania and New York – were neither negotiated nor performed in the Northern District of California, and the deal was brokered through the Las Vegas office of Sperry Van Ness using Gluhaich's Nevada real estate license. *See id.* at ¶ 17. Gluhaich was working out of the Nevada office of his firm, as a Nevada real

estate agent, in negotiating the purchase and communicating with Morabito.  *See id.* at ¶ 31.  The only act connecting this case to the Northern District is Willard's signing of the Purchase Agreement in Santa Clara County.  Even coupled with plaintiffs' alleged residence there, this act alone is insufficient to justify a transfer to that district.

### 4. The District of Nevada will potentially be more familiar with some of the governing law in this action.

A "diversity case should be litigated 'in a forum that is at home with the law that must govern the action.'"  *Costco Wholesale Corp.*, 472 F. Supp. 2d at 1190 (S.D. Cal. 2007) (quoting *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d at 843.  Since the Purchase Agreement is governed by a Pennsylvania and New York choice of law provision (*see* ¶ 15), this factor is largely neutral as between the District of Nevada-Reno and the Northern District of California.  However, Nevada law may figure significantly in this action, owing to Gluhaich's questionable acts during the Purchase, which he handled using his Nevada real estate license through a Nevada broker.  *See* Morabito Decl., ¶¶ 17-20.  California law can have no application here.  This factor thus favors transfer to the District of Nevada-Reno.

### 5. Plaintiffs' choice of forum is entitled to no deference, since both parties are seeking transfer from the Central District, which is an improper forum.

Where the parties have agreed that the case should be transferred – and disagree only as to the proper transferee district –  the plaintiff's new choice of forum is immaterial to the court's convenience analysis  *See Raiber, supra*, 1999 WL 335821 at *1 (treating plaintiff's choice of forum as an "inapplicable" neutral factor, where each party was seeking transfer to a different district).  Accordingly, plaintiffs' preference for the Northern District is entitled to no deference.

# IV
# CONCLUSION

For all the foregoing reasons, Morabito respectfully urges this Court to deny plaintiffs' motion to transfer this action to the Northern District of California and instead grant his motion to transfer the action to the District of Nevada – Reno.

DATED: June 30, 2008            Respectfully submitted,

Mark T. Drooks
Lisa M. Lawrence
BIRD, MARELLA, BOXER, WOLPERT,
    NESSIM, DROOKS & LINCENBERG, P.C.


By: /s/
_____
Mark T. Drooks
Attorneys for Defendant Paul Morabito